1
2
3
4
5

**IN THE UNITED STATES DISTRICT COURT**

6

**FOR THE WESTERN DISTRICT OF WASHINGTON**

7
8
9

ATM SHAFIQUL KHALID, an individual, and
on behalf of similarly situated, Xencare
Software, Inc.,

10

**No.** 2:20-cv-0711 RAJ

11

Plaintiff,

12

vs.

**COMPLAINT FOR DAMAGES FOR
ANTITRUST, RACKETEERING,
SECTION 1985,  SECTION 1983**

13

CITRIX SYSTEMS, INC., a Delaware
corporation, AKA John Doe *n,*

**JURY DEMAND**

14
15

Defendant.

16
17

COMES NOW the plaintiff, ATM Shafiqul Khalid ("Khalid"), and Xencare Software,

18

Inc. ("Xencare") together referred as "Plaintiff" or "Plaintiffs" for a cause of action against

19

Defendant Citrix Systems, ("Citrix"), who us also John Doe 1 through John Doe *n,* together

20

referred as "Defendant(s)", states and alleges as follows:

21
22
23
24

**NATURE OF THE ACTION**

25
26

1. This action challenges if a corporation gets liability in antitrust and Racketeering for a deliberate and extortionate act of detaching constitutional rights from the constitutional entity and converting the constitutional protection into pure contractual rights.

2. This action challenges under Section 1 of the Sherman Act for creating restraint of trade with overbroad employee agreement among Citrix and its employees.

3. Defendant(s) employee agreement is a restraint of trade that are per se unlawful under Section 1 of the Sherman Act 15 U.S.C. § 1 and an attempted monopoly under Section 2 of the Sherman Act 15 U.S.C. § 2. Plaintiff seeks to recover damages sustained because of the violation of Citrix.

4. Cause of Action under the Federal Racketeering Act under 18 U.S.C. § 1964(c) for Citrix violation of 18 U.S.C. § 1962(d) with the predicated act of extortion under Hobbs Act 18 U.S.C. § 1951.

## JURISDICTION AND VENUE

5. The Plaintiff, ATM Shafiqul Khalid signed an employment agreement with defendant(s). Defendant(s) through this employee agreement claimed the right to patent title invented by Khalid that was not covered by the employee agreement. Patent and patent goods substantially affect interstate commerce. The court has subject matter jurisdiction under Section 15 of the Sherman Act, 15 U.S.C. § 15 for violation of Section 1 of the Sherman Act § 1. This Court also gets subject matter jurisdiction under 18 U.S.C. § 1964(c).

6. Venue is proper in this jurisdictional district under Section 22 of the Clayton Act, 15 U.S.C. §§ 22 and/or under 28 U.S.C. § 1391(b)(2),(c).  Defendant(s) transact or have transacted substantial business here.

COMPLAINT
KHALID v CITRIX
Page 2 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

1

**DEFENDANTS**

2
7. Defendant Citrix Systems, Inc. is a Delaware corporation with its regional office of business

3
in Redmond, Washington.

4
8. Some discovery needed to be conducted to find more Defendant(s) who employed employees

5
who were subject to Defendant(s)'s patent grabbing scheme. For now, Plaintiff is using the

6
fictitious name "John Doe 1 through John Doe $n$" to represent them.

7

8

**RELATED CASES**

9
9. Khalid filed in King County Superior Court case No. 15-2-24309-8 SEA("state court

10
proceedings" or "*Khalid v Citrix*"). A jury trial was completed on August 1, 2018, in Khalid's

11
favor. That case is now on appeal. Citrix filed a suit against Khalid with the District Court

12
for Western Washington Court case No. 2:16-cv-00650 to claim Khalid patent along with

13
moving "15-2-24309-8 SEA" case. The case was remanded back to state court, "15-2-24309-

14
8 SEA" for an improper move. Khalid also filed another case against Microsoft in this court

15
case No. 2:19-cv-00130 that Microsoft illegally claimed Khalid patent in collaboration with

16
Citrix. This case is pending with reconsideration at this time.

17

18

19

**FACTS**

20
**Background**

21
10. Citrix Systems, Inc., Citrix, is an American multinational software company founded in 1989

22
as a Delaware Corporation. Citrix provides software and networking solutions for enterprise

23
customers. Citrix has headquartered in Fort Lauderdale, Florida, and has a branch office in

24
Redmond, Washington. In 2016, Citrix had $3.42 billion in revenue and approximately

25
10,000 employees worldwide.

26

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

11. Plaintiff is a very creative engineer and serial inventor. Plaintiff had been named inventor on Nineteen (19) patents issued by the United States Patent and Trademark Office ("USPTO") and European patent office. Plaintiff always had his own creative projects in various areas to exercise his natural creativity. Plaintiff is an expert in the area of computer software, operating systems, cloud, and virtualization with 20+ years of experience.

12. Before being employed by Citrix, Plaintiff wrote critical software components that had been deployed in over one billion systems, and Plaintiff gained significant expertise in software virtualization, hypervisor systems, software, digital content subscription, and software security. Plaintiff had published fourteen (14) research papers in journals and conference proceedings.

13. Plaintiff worked for Citrix from September 18, 2006, until October 3, 2011, at Citrix regional office in Redmond, Washington. Plaintiff had been a Washington resident since 1998.

14. On September 18, 2006, plaintiff signed an employment agreement with Citrix System titled Confidentiality and Employee Non-Disclosure Agreement ("Employee Agreement"). See *Exhibit A*. During his employment with Citrix, Khalid filed two patent applications that resulted in US patent  8,286,219("'219 patent") and 8,782,637("'637 patent") on his own time and dime. The agreement violated WA public policy under RCW 49.44.140 and RCW 19.86.020.  The agreement had a choice of law provision requiring construction of the contract under Florida law.

15. Khalid filed Twelve (12) patent applications by 2012, *Exhibit J*, a few more through 2017. Plaintiff had 30 patentable ideas in the pipeline, *Exhibit R*, all except two were abandoned

COMPLAINT
KHALID v CITRIX
Page 4 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

because of litigation interference from Citrix and Microsoft's where both claimed ownership to Khalid's patent.

16. On Oct 3, 2011, Citrix terminated Khalid, before termination Khalid signed a Severance Agreement with Citrix amounting $30,757, see *Exhibit B*. Khalid earned that severance per established Citrix policy based on Khalid's year of service and because the nature of separation was no fault at Khalid.

17. On Oct 25, 2011, Citrix through its counsel Kellan Ponikiewicz claimed ownership to all patent applications filed by Khalid --- "which may be used in relation" with "products … sold by Citrix" --- an illegal language in violation of RCW 49.44.140(1). In 2018, WA court reformed the agreement by removing offending language Citrix relied on. Citrix withheld Khalid's severance money. *Exhibit C*. Citrix HR personnel Lisa Barney communicated the decision to Khalid.

18. By March 2012, Citrix made several claims to claim free ownership and licensing rights to Eight (8) patent applications Khalid filed see *Exhibit D*.

19. On September 18, 2015, Citrix through its counsel  Erica Wilson told Khalid that Citrix would maintain its assertion and Citrix will file suit against Khalid if Khalid takes any action against Citrix, see *Exhibit E*.

20. On October 2, 2015, Khalid filed a suit against Citrix in King county superior court to clear patent ownership issue of '219 and '637 patent along with damage. The suit alleged that Citrix breached "Employee Agreement" with few more claims.

21. On May 12, 2016, Citrix followed through its litigation threat by filing a countersuit against Khalid in this court, case no. 2:16-cv-00650, for specific performance on its illegal contract,

a declaratory relief that it owned 219 and 637 patent, an injunction so that Khalid and his start-up Xencare can't use the patent. After evaluating evidence, WA trial court dismissed all those claims in 2018.

22. On May 27 2016, 2 weeks after Citrix filed suit against Khalid, Microsoft using its counsel sent a letter to Khalid claiming Microsoft got rights to 219 patent and 637 patents. See *Exhibit K*("M&G letter"). Microsoft based its assertion saying it has vendor agreement with Citrix and as a result it owned all patent produced by Khalid. Microsoft also said Khalid didn't exclude those patents from the "MS-Employee Agreement" Khalid signed with Microsoft on Dec-19, 2011, see *Exhibit L*. Microsoft falsely asserted, because Khalid didn't disclose patent applications resulting 219 patent and 637 patent, those patents became part of Microsoft. Khalid disclosed those patents in MS-Employee Agreement using an exclusion list when Khalid signed the MS-Employee Agreement with Microsoft and Microsoft acknowledged the receipt of that it in 2011, see *Exhibit M*. Microsoft completely denied the list in 2016 using the M&G letter. Citrix used the M&G letter as a piece of evidence to pursue  Jury in state court that Khalid doesn't own '219 patent and '637 patent because either Microsoft or Citrix owns those patents.

23. On February 17, 2017, Citrix Vice President Andy Cohen in state court case deposition as Citrix Rule 30(b)(6) witness testified that, in 2010 in Virtual desktop market space Citrix had or expected to have 60% market share, and Microsoft had or expected to have 10% market share, together Microsoft and Citrix were expected to control 70% market share.  In one thin terminal question, Cohen replied, "Citrix does not sell thin terminals". That meant Citrix didn't sell '637 patented products.

COMPLAINT
KHALID v CITRIX
Page 6 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

24. In 2017, Khalid direct manager Daniel Benson by sharing his written employment contract and Bill Deforrest through deposition testimony said they had similar patent assignment clause like the one Khalid had in his Employment Agreement with Citrix.

25. On April 3, 2018, during state court proceedings, in response to  Khalid's discovery request for production of documents related to '219 and '637 patents and between Citrix and Microsoft, Citrix asserted "common interest" privilege, *Exhibit H* at 11.

26. On April 16, 2018, Citrix counsel had a conference with Khalid's counsel and the meeting log shows, "On RFP 40 and the common interest privilege, Plaintiff[Khalid] notes that Microsoft is not a defendant and Citrix claims an ownership interest in Khalid's patents potentially adverse to Microsoft. Citrix claims a common interest with Microsoft based on Plaintiff's[Khalid] potential use of his patents adverse to both Microsoft and Citrix", *Exhibit I*. Citrix maintained this position throughout state court trial.

27. Throughout the trial, Citrix didn't identify any of its products practicing 219 and 637 patents that further back "common interest with Microsoft based on Plaintiff's[Khalid] potential use of his patents adverse to both Microsoft and Citrix", *Exhibit I*. This shows Citrix had motivation to help Microsoft.

28. In July 2018, Citrix chief architect Brad Petersen testified and suggested that Citrix wanted to protect its thin client partner and Khalid patent could have been hostile to those partners. The thin client was a subject matter of '637 patent. Brad also testified that Citrix never sold anti-virus kinds of products an area '219 patent targeted to solve. Brad also testified that Citrix didn't sell any thin client terminal.

COMPLAINT
KHALID v CITRIX
Page 7 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

29. In July 2018, Citrix patent attorney Kellan Ponikiewicz testified that her superior at Citrix Robert Feldman asked her to check if Khalid patent was generally related to Citrix. Citrix counsel testified Khalid security patent was related to Citrix XenClient hypervisor product. Citrix XenClient is a client hypervisor product bringing in virtualization in client H/W. However, Virtualization or Hypervisor is not a word ever used or referenced directly or indirectly in the patent application of '219 patent. Citrix didn't produce any written record of any of those analysis.

30. Earlier in the state court proceedings, state court held that "as a matter of law that Defendant's[Citrix] Employment Agreement violates RCW 49.44.140 and was unfair in violation of RCW 19.86.020" and "injurious to public interest". RCW 49.44.140 is strong public policy in WA and court reformed the agreement.

31. On August 1, 2018, in a unanimous verdict, 12 King County jury found that Citrix breached "Employee Agreement", Khalid didn't breach "Employee Agreement" by not assigning 219 patent and 637 patent to Citrix. The jury also found Khalid didn't breach any other provision of "Employment Agreement". The jury also awarded $3 million damages to Khalid. The jury also found Citrix breached the severance agreement, Khalid didn't breach severance agreement and Khalid was awarded severance money. The jury denied all of the Citrix claims.

32. End of 2020, following the Jury trial, State court issued a judgment of $5.8 million carrying 12% interest that included $3 million damage for lost profit based on products from 219 and 637 patents and $2.8 million fee and cost. Through a declaratory judgment, Court said Khalid

COMPLAINT
KHALID v CITRIX
Page 8 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

owned '219 and '637 patent and Citrix didn't have any form of rights to those patents. See *Exhibit F&G*.

## Development of 8,286,219 and 8,782,637 Patent

33. While in graduate school, during 1996-1997, Plaintiff invented an idea of subscription that would allow a user to consume software without driving to a store to buy it. In 1997, Plaintiff did some work on subscription in a very rudimentary form. Plaintiff continued his work for years through 2010 when the idea evolved and transformed into a mini-cloud subscription that would allow a user to consume computing resources and content on-demand, based on the very theme Plaintiff had in 1996. Around the 2006 timeframe, Khalid's partner requested him to build a multi-function device that integrated many devices inside a home. Plaintiff had one patent application filed in 2001 and another in 2007 to cover subscription including digital content. The idea evolved to form cloud computing for residential users using mini-cloud host and thin terminal that Khalid file das a full patent application on November 22, 2010. The Patent office issued a patent 8,782,637 ("'637 patent") on July 15, 2014. Plaintiff had a total of 30 ideas in the form of patent or in development stage. To date, Plaintiff continued adding his labor to refine and prosecute patent applications through the US patent office coming from those ideas.

34. Mini-cloud '637 patent is comprised of several components: a) thin terminal is something like Roku stick that can stick to any monitor then connect to, b) subscription provider in the cloud, and c) connect to a mini-cloud host device to deliver computing resources with specific integration technique outlined in the patent. Microsoft Xbox One uses the mini-cloud

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

invention. The invention is expected to reduce consumer cloud subscription costs by device consolidation.

35. Around 2005, while working with his friends and partner, Plaintiff made an invention to protect a computer system from viruses and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK". The application expired in 2006.

36. On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, after some validation and improvement with "single system framework". Plaintiff startup team refiled the 2005 patent application titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663.

37. On October 9, 2012, US patent office issued Patent 8,286,219 ("'219 Patent") for the application number 12/032,663.

38. All those years, Khalid recruited a team of engineers with 20 people to incubate and productize both security and mini-cloud and related technologies. Khalid and his team invested more than 30,000 engineering hours, equivalent to at least a $4.3 million investment, *Exhibit T*. another $2.8 million to clear patent title from Citrix illegal claim and with interest and other accumulated cost, to date total cost exceeds $8 million.

39. To commercialize inventions Khalid formed Xencare Software, Inc. and Pcxen Systems with controlling shares. Khalid shares litigation rights with his startup and any rights will be deemed to be retroactively assigned to Khalid for any jurisdictional defects, *Exhibit P*.

COMPLAINT
KHALID v CITRIX
Page 10 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**Citrix helps its partner to infringe  Mini-cloud patent**

40. Between Nov-2009 and Sept-2011 while Khalid was developing '637 patents, Khalid ran several demos with Citrix executives. Citrix executive told Khalid Citrix will invest in the product, but later declined to invest, terminated Khalid, made claim to Khalid's patent and moved in court in 2016 to claim ownership.

41. Around March 11, 2016, Citrix announced software to allow its partner to build Raspberry Pi based client to be used with Citrix workspace hub software, a system Khalid's mini-cloud patent-based system could offer. In 2018, Citrix Chief Architect testified Citrix wanted to protect its partner to ensure Khalid's patent doesn't become hostile to its partner.


**Micro-Data center incubation IP licensing efforts**

42. By the year 2014, mini-cloud thin terminal part was developed by various companies including Roku, Amazon Fire TV stick etc., reaching 40% of US households. Plaintiff decided to incubate further on ideas using the mini-cloud host component with a business model called Micro-Data center that can work as a single device, or form a mega data center distributed inside a City. *Exhibit S*.

43. Khalid also identified 30 patents/ideas in an attempt to create an IP portfolio company that would innovate and monetize invention by itself or through others. Khalid tried to resolve his dispute with Citrix even with a nominal license fee of $50K/patent that Citrix rejected and engaged Khalid in costly patent ownership battle.

44. The royalty market size of the disputed patent was estimated to be $4 billion over the term of the patent of 20 years after factoring in 1% of a royalty of $20 billion/year for the home

COMPLAINT
KHALID v CITRIX
Page 11 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

gaming and virtualization. The targeted market for the Micro-Data center was around $70 billion/year and the incubation could control Ip licensing and productization portion of that market.

## Citrix Refused Licensing Offer

45. Khalid tried to create a new start-up in 2015 using his patents. On Oct 2, 2015, before filing state court action  Khalid offered Citrix to resolve the patent issue with a license term of $50,000/patent. Citrix didn't accept the offer. Plaintiff was forced into contentious litigation in state court where Khalid lost another 4+ years to build an additional patent portfolio. Citrix engaged Khalid in litigation with patent ownership battle with accumulated cost over $3 million – an amount higher than Khalid's lifetime earnings.

46. After losing its claim on patents in state court, Citrix asserted that it might get some right to patent through Microsoft, and Microsoft asserted in the M&G letter that Microsoft has some right to disputed patent through its agreement with Citrix. Those make a circular argument and mutually exclusive.

## Microsoft and Citrix conspiracy

## Racketeering and public policy violation

47. Khalid had been incrementally developing his patented technology over 20+ years. Khalid made numerous improvements and inventions over those times. Both Citrix and Microsoft refused to invest a dollar in Khalid's efforts. Khalid and his team invested more than 30,000 engineering hours with a cumulative investment of $7.1 million or more.

48. Microsoft issued M&G letter on May 27, 2016, just 2 weeks after Citrix brought suit against Khalid in this court. Citrix used the M&G letter to argue that Microsoft made ownership

COMPLAINT
KHALID v CITRIX
Page 12 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

claim to Khalid patent. Citrix and Microsoft had been partners for a long time and Microsoft affirmed the vendor relationship in the 2016 M&G letter. During the discovery of state court proceedings in "*Khalid v Citrix*" Microsoft didn't produce part of the 2011 MS-Employee Agreement that included "patent exclusion list" that would have showed M&G letter made a false assertion. In the state court proceedings, Citrix refused to produce any evidence of communication between Citrix and Microsoft concerning '219 and '637 patents.  Citrix asserted common interest privilege on that communication.

49. Citrix and Microsoft have a partnership agreement to share patents between them. Microsoft has motivation to help Citrix to win Khalid patents so that Khalid couldn't use those patents against Microsoft.

50. Microsoft destroyed the patent exclusion list Khalid submitted as part of his MS-Employee Agreement. Then Microsoft crafted a claim in the M&G letter that later used by Citrix. Both Citrix and Microsoft knew that a constructive notice on patent ownership will force Khalid to notify anyone interested to buy Khalid's patent. Citrix and Microsoft maintained constructive notice to invalidate any patent title transfer under 35 USC § 261.

51. In January 2009 Microsoft filed litigation in WA state court against its ex-employee Miki Mullor, WA Sammamish to gain access to Miki's patents, *Exhibit N*. In that litigation, Microsoft submitted Miki's employment agreement with Microsoft but that agreement didn't have any exclusion list or any of Miki's disclosure that Miki submitted. In the court filing, Microsoft said "OEM's[partners] looked to Microsoft to defend and indemnify them against Ancora's[miki's startup] claims", Exhibit N at 8 ¶ 9, confirming a collaboration between

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

Microsoft and its partner. The M&G letter was to help Citrix in similar ways where Citrix was Microsoft's partner and vendor.

52. On January 30, 2009, in an email to Cnet News in responding to the lawsuit, where Microsoft asserted Miki didn't properly disclose his patent to Microsoft before Miki'semployment, Miki said that he had informed Microsoft about his patent in his resume and employment agreement directly disputing what Microsoft filed. *Exhibit O.*

53. On January 30, 2009, Miki Mullor further wrote to Cnet, "Microsoft's complaint against me in Washington is a shameful and a desperate attempt to put pressure on me and my family from continuing to pursue our legal rights in the federal court in Los Angeles". Miki filed a patent infringement lawsuit against Microsoft partner Dell, HP, and Toshiba in Federal Court in Los Angeles and Microsoft retaliated against Miki when Microsoft partner approached Microsoft for help. This conspiracy is very similar to Khalid's scenario where Microsoft and Citrix conspired to hurt Khalid's patent right where Microsoft denied Khalid ever submitted any exclusion list. The M&G letter and Miki's case show Microsoft is engaged in a blatant cover-up of a conspiracy intended to steal employee's intellectual property and labor time.

54. According to Miki's lawyer "Microsoft seeks a formal license agreement providing Microsoft with "an irrevocable, perpetual, royaltyfree, worldwide license",  to the patent in dispute", *Exhibit O*, very similar to what Microsoft did with the M&G letter. Khalid alleged similar pattern in where Microsoft wrote the M&G letter 2 weeks after Microsoft partner Citrix moved against Khalid in federal court to take ownership to 219 and 637 patents.

55. Microsoft maintained its pressure scheme on Miki Mullor until the end of 2009 when Miki settled with Microsoft on the patent issue under undisclosed terms. Microsoft, by using its

COMPLAINT
KHALID v CITRIX
Page 14 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

M&G letter in 2016, tried to achieve a similar result where Microsoft wanted to take over '219 and '637 patents under a vendor agreement with Citrix at a time when Citrix System filed counterclaim/suit against Khalid to claim ownership to '219 and '637 patents. Citrix tried to use this same Microsoft assertion written in that letter to hurt Khalid's damage claims against Citrix by arguing that either Microsoft or Citrix owns 219 and 637 patents.

56. Around April 16, 2018, "Citrix claims a common interest with Microsoft based on Plaintiff's potential use of his patents adverse to both Microsoft and Citrix". In the M&G letter, by claiming ownership right to 219 and 637 patents through Citrix, Microsoft injected itself to benefit from any outcome in favor of Citrix. Those support conspiracy between Microsoft and Citrix.

57. Citrix intentionally withheld Khalid's severance money for 9+ years to date,  forced Khalid and his team to spend more than $2.8 million by refusing $50,000/patent license to cause fear in Khalid of financial loss and pressure Khalid to give up his patent right. Citrix asserted right to Khalid patent using an illegal and unenforceable Employee Agreement that equates Citrix made the claim without any contractual basis. Citrix's attempt to interpret its illegal contract based on its wish to claim Khalid's patent in collaboration with Microsoft with threat equates to robbery by force, threat, fear, or bad faith.

58. The "exclusive Right" in a patent is secured to inventors by _US constitution Art I Sec 8 Cl 8_. In 2015, among all issued patents of 298,407, 4.7% were issued to US inventors, 93.2% went to domestic and foreign corporations. _Exhibit Q_ at 8. This shows the right US constitution granted to inventors, it is cheaper to give up than keep it.

**Market Size of technology covered by patents,**

COMPLAINT
KHALID v CITRIX
Page 15 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**and Injury to Market**

59. In 2016 Microsoft had 88% desktop market share in the residential environment. Citrix and Microsoft jointly held 70% market share in desktop virtualization markets. Microsoft had 87% market share in office apps that Citrix can deliver remotely in partnership with Microsoft.

60. Microsoft Xbox One product infringes on claims 1, 4, and 20 of US patent 8,782,637 which is a violation of plaintiff's exclusive right protected under 35 USC § 271. The infringement is a direct or indirect infringement using all of the components in the 637 patent, or Xbox One uses components in an equivalent way that infringes on the 637 patent. The Microsoft infringement is willful, and Microsoft used fraud to claim the 637 patent right to avoid liability under infringement laws, Citrix tried to help Microsoft to benefit their partnership.

61. On or around July 21, 2017, Microsoft CEO Satya Nadella said in their financial reporting, "Our gaming business now is more than $9 billion and growing profitably – 2017". Considering Microsoft is not the only player, the overall market size is expected to be total at least $400 billion in business over 20 years considering an additional $11 billion/year outside Xbox gaming. A nominal 1% royalty would set the infringement value to $4 billion that Microsoft and Citrix tried to corrupt. That $4 billion constitutes submarket within the relevant cloud and gaming market.

62. *Exhibit S* shows in detail a market analysis that mini-cloud and intended patent list was to target a market of $70 billion/year by introducing a personal data center concept. Those identified patents would have gotten $700 million/year royalty at 1% royalty rate.

COMPLAINT
KHALID v CITRIX
Page 16 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

63. _US Const Art I Sec 8 Cl 8_ required congress to set patent terms to "Progress of Science and useful Arts" which congress set to 20 years. A Patent is inherently public property upon the expiration of the patent term. US congress set the patent term in such a way so that the benefit to the public out weight the benefit to the patent owner who gets exclusive right within the patent term. The exclusive right restricts other to use the patent within terms. Because of Citrix's wrongful assertion in 2012, Khalid had to abandon all but two patents from his 12 patents portfolio. The similar incident happened when Khalid had to abandon all but two patents from his potential 30 patent portfolio when Citrix continued its litigation in 2016. Because of those injuries public will be unable to receive benefits from those potential 30 patents. Those injuries are irreversible.

64. As part of patent policy under _US Const Art I Sec 8 Cl 8_, patent also brings new products in the market place that benefits the public with enhanced competition reducing prices. Because of Citrix's conducts Khalid was unable to bring new products in the market causing market injury.

65. State court Jury found Khalid's product based on 219 and 637 patents could have earned $3 million in net profit based on revenue projection through 2016. That means public benefit would have been at least $3 million as part of the patent policy that the public has lost in value – an amount that would go up significantly if full 20-year term were considered. This didn't include the broader market for potential patent royalty.

**Damages**

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

66. Citrix wrongful act and its concerted efforts with Microsoft caused damages to the patent terms, loss of patent's provisional rights, loss of patents in the pipeline, loss of reasonable royalty and lost profit from patents from markets as described above.

67. Because of Citrix's wrongful action Plaintiff(s)  sustained damages in the state court proceeding: a) at least $4 million in cost, fees and interest b) recovery of $27 million lost profit c) accumulate interest on judgment d) damages identified in state court to make it treble.

68. Citrix is responsible for treble damage as described above for violating the Antitrust and Racketeering Act.

69. The Plaintiffs suffered damages proximately caused by the actions of the Defendant as set forth below.

**VIOLATION ALLEGED**

**(Count I – Declaratory Relief – Patent Term  "the Exclusive right"**
**for "*limited Times*" secured in "Inventors")**

70.  Plaintiff hereby incorporates paragraphs 1 through 69.

71. There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiff(s) and Defendant if *"limited Times"* with *"the Exclusive right"* patent term is secured to inventors by <u>*US Const, Art I, Sec 8, Cl 8*</u> and can't be moved to Defendants by contract. That declaration will help to resolve other issues in this lawsuit such as if Citrix could demand a free patent assignment of the patents that equates zero year patent term to Khalid as inventors.

72. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, Plaintiff in good faith requests that the Court declare the following:

COMPLAINT
KHALID v CITRIX
Page 18 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

73. Citrix contract and Citrix demand of free ownership are illegal in violation of the patent term *"limited Times"* with *"the Exclusive right"* to '219 and '637 patent.

74. Citrix contract assigning free employee patent to itself violates patent term and policy under <u>US Const, Art I, Sec 8, Cl 8</u>.

75. The patent clause <u>US Const, Art I, Sec 8, Cl 8</u> authorized congress to set patent term of "*limited Times*" secured to inventors only, congress set to 20 years under *35 USC § 154(a)(2)*. The patent clause didn't authorize anyone to move that term to anyone else either by congress or by another private party because patent after the expiry of the term becomes absolute public property.

76. "the Exclusive right" to patent is attached to the patent term by <u>US Const, Art I, Sec 8, Cl 8</u> because the right doesn't exist outside the patent term. A claim to "the Exclusive right" is essentially a claim to patent term and separate from common law "exclusive right" in common law non-patent property. Any common law or contractual demand of "the Exclusive right" to a patent is an violation of the patent term because <u>US Const, Art I, Sec 8, Cl 8</u> didn't authorize the Congress to enact any statute to detach patent term from inventors and secure to someone else other than public. Inventor can authorize someone to act on behalf of inventors.

77. If an inventor pledge to assign his patent term or right under patent to another party under a contract, the parties claim rises only to the extent of breach in contract, and he is free to take back the value of bargain in contact with damage. That must not equate to securing patent term to that party because <u>US Const, Art I, Sec 8, Cl 8</u> authorized congress to secure

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

patent only to inventors, not anyone else. Citrix couldn't file for injunction that Khalid couldn't use his invention in 219 and 637 patents.

**(Count II - Violation of section 1 of Sherman ACT)**

78.  Plaintiff hereby incorporates paragraphs 1 through 69.

79.  *Contract, combination or conspiracy: First*, The combination or conspiracy between Khalid and Citrix, *Second*, the Employee Contract between Khalid and Citrix, *Third*, The M&G letter or the vendor agreement setting a relationship between Citrix and Microsoft, *Fourth* two or more combinations among Khalid, Citrix, Microsoft, or the conspiracy in the guise of collaboration or partnership, became *Contract, combination or conspiracy* under section 1 of Sherman act.

80.  Those *Contract, combination or conspiracy* was to maintain illegal ownership claim on '219 and '637 patent by Citrix and Microsoft to violated "the exclusive Right" of 219 and 637 patent secured to Khalid. Those illegal acts restricted "the Progress of Science and useful Arts" under the *US const, Art I, Section 8, Cl 8* by making it impossible for Khalid to receive an incentive from the relevant marker to further develop and add more invention for the public welfare embedded in the patent terms.

81.  Citrix and Microsoft both used their Employee Agreement with Khalid where those agreements was void, voidable, and unenforceable to 219 and 637 patents protected under RCW 49.44.140(1). A demand of $0 license or free ownership to Khalid's patent was van iolation of *US const, Art I, Section 8, Cl 8.*

82.  The Employee Agreement between Khalid and Citrix gave salary benefit to Khalid, offered protection to excluded patents. State court Jury in *Khalid v Citrix* assigned $3

COMPLAINT
KHALID v CITRIX
Page 20 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

million damage to Khalid because of Citrix breach of contract. Those made the Agreement bilateral.

83. On May 27, 2016,  Microsoft issued the M&G letter that Microsoft got free ownership to Khalid's patent under vendor agreement with Citrix. During 2017 and 2018, Citrix used the M&G letter to restrain Khalid further to clear his patent title with an argument that either Citrix or Microsoft owns those patents.

84. *Restraint:* Citrix overt acts restricted Khalid to get in the market with his patent right rather forced Khalid to clear his patent title through litigation with the accumulated cost of more than $4 million to Khalid. Khalid lost valuable patent terms. Citrix overt acts make policy under *US const, Art I, Section 8, Cl 8* meaningless because Khalid can't get an incentive for his patent anymore.

85. Citrix over acts diminished market share of $4 billion Khalid could have gotten through its '637 and '219 patent and those benefits shifted to Citrix and Microsoft in an equal dollar amount that those patents could have earned. Citrix by attempting to secure patent term to itself rather than securing to Khalid caused the restraint in violation of patent policy.

86. *Injury to Market public welfare:* Patents become public property upon expiration of patent term currently set to 20 years. Restricting inventors to use his patents during the patent term hurts patent policy because inventors can't receive an incentive from the market to develop his invention to increase competition in the market. Inability to receive incentive from market limit Khalid's ability to add more inventions to benefit public welfare. Those are declared policy in *US const, Art I, Section 8, Cl 8* to secure "the Exclusive right" to

COMPLAINT
KHALID v CITRIX
Page 21 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

"inventors" for limited "Terms". In this case, Citrix's overt act damaged 12 patent portfolio in 2012 and 30 patent portfolio in 2017. Those patents were supposed to be public patent property over time. This creates a presumption that Citrix's action didn't benefit the market at all and likely damaged the market. Therefore, Citrix overt act caused market injury under the 'Quick-look' rule of reason analysis. Citrix can establish with a rule of reason analysis that Citrix's over acts helped competition or was market neutral.

87. Citrix and Microsoft demanded free ownership to 219 and 637 patents that equate zero year patent term to Khalid. Citrix and Microsoft using above illegal _Contract, combination or conspiracy_ to reduce 20 years patent term to zero-year, and move those terms to itself. The terms is only secured to Khalid by _US const, Art I, Section 8, Cl 8_ within terms and goes to the public after the terms. Citrix practice is injurious to patent terms which is public policy.

88. _Per se violation:_ Citrix and Microsoft both set the price to $0 to the "exclusive right" to patents using its illegal or voidable contract. This is per se violation of Sherman Act section 1 for price-fixing of federal property that gets is protection from the constitution in oppose to common law property that can have zero price under a contract. Driving inventors' patent price to zero is equivalent to deleting _US const, Art I, Section 8, Cl 8_ from the constitution. This is pe se restraint of trade without any further common law analysis.

89. _Walker process claim:_ Citrix asserted right to Khalid patents in bad faith because its contract was illegal and was unenforceable to Khalid's patents. In an attempt to force Khalid to give-up his patent right, Citrix rejected $50,000/patent licensing offer and

engaged Khalid in patent ownership litigation costing Khalid more than $4 million. Citrix knew it didn't invest in Khalid's patent and free license demand is against patent policy. Citrix was motivated to help its partners at the expense of Khalid even when Citrix didn't have a single product using the patent.

## (Count III - Violation of section 2 of Sherman ACT)

90.  Plaintiff hereby incorporates paragraphs 1 through 69 and reallege sections from Count II.

91. *Market Analysis:* Khalid and his start-up own 637 patent. During the term of the patent, 637 patent was expected to operate in a patent licensing market with an exclusive $4 billion sub-market ownership within a broader cloud/gaming market of $400 billion. 637 patent had legal monopoly power within the $4 billion sub-market.

92. By overt act, because of Citrix and Microsoft partnership, and paying no development cost to Khalid, Citrix attempted to retain 100% market power within the $4 billion sub-market attached to 637 patent, and share that market power with Microsoft enabling Microsoft to avoid paying any license to 637 patent and effectively absorb 100% of the $4 billion sub-market within their partnership violating the Sherman act section 2 for attempted monopoly.

93. The '219 and '637 patent had monopoly power covered by the patent grant with $4 billion submarket power. Citrix has a significant market share between 70-90% by itself and through its partner, Microsoft in various areas '637 patent could draw revenue. Microsoft and Citrix illegal combinations created a dangerous possibility where Citrix and Microsoft could combine the market power in '637 patents with its existing market. This is an attempted

COMPLAINT
KHALID v CITRIX
Page 23 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

monopoly or to maintain or expand existing monopoly at the cost of diminished Khalid's market share protected by those patents.

94. *Market Injury:* As shown earlier, patent by nature is public property, inventors gets exclusive right to use it for limited terms to get an incentive that creates a controlled monopoly. When Microsoft attempted to get that monopoly power the market disappeared destroying the patent policy to "[p]rogress of Science and useful Arts", *US const, Art I, Section 8, Cl 8*. This creates the presumption in Khalid's favor for market Injury unless Citrix can offer a rule of reason analysis to show its action helped the market or was market neutral. Citrix over acts also damaged and stalled the development of 30 patents that could have benefited public welfare.

95. *Damage and causation:* Khalid sustained direct and indirect damages flown from the violation.

**(Count IV – Attempt to violate Involuntary Servitude**

**under 18 USC § 1594(a))**

96. Plaintiff hereby incorporates paragraphs 1 through 69.

97. Khalid along with his start-up employees invested 30,000 engineering hours to develop and secure patent grants under the '219 and '637 patents. Any grant of patent license to a person is labor 'service' under the meaning of 18 USC 1589 because service means "act of assistance".

98. In 2012 Citrix's demanded to transfer those patents to Citrix or grant Citrix free license by threatening Khalid with legal action. Citrix filed the actual legal claim in 2016. Citrix also illegally withheld Khalid's severance money for years to maintain illegal ownership claim

COMPLAINT
KHALID v CITRIX
Page 24 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

on '219 and '637 patent in an attempt to get the intended "labor service" from Khalid. Those were 'serious harm' under the meaning of 18 USC 1589.

99. Citrix attempted to obtain patent titles or patent licenses from Khalid without any compensation is an attempt to violate 18 USC **§** 1589 to get free labor or service with serious harm.

100.    Khalid would have never offered Citrix voluntarily free labor or service. Citrix tried to maintain control with a litigation threat, by withholding severance money and by clouding the patent title. Those constitute an attempt to violate or violation of "Involuntary Servitude" under 18 USC § 1584.

101.    Citrix violated USC § 1594(a) for an attempt to violate or violating 18 USC § 1589 or 18 USC § 1584 which is actionable under 18 USC § 1595(a).

**(Count V - Defendant Violated Racketeering ACT**

**18 U.S.C. § 1962(c-d))**

102.    Plaintiff hereby incorporates paragraphs 1 through 69.

103.    A corporation under the law is allowed to conduct only legal business. The part of Microsoft and Citrix conducting illegal activities like extortion, fraud or forgery became an illegal segment under the law and formed a Rico enterprise separate from its legal counterpart.

104.    Microsoft and Citrix partnership formed an associate-in-fact enterprise with a common purpose of  taking ownership of '219 and '637 patents using a scheme that included racketeering activity under extortion and email or wire fraud. The operation of the enterprise continued in 2016 when Microsoft asserted interest in Khalid's patent

COMPLAINT
KHALID v CITRIX
Page 25 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

through a vendor agreement with Citrix. The enterprise operated in 2018 when Citrix asserted common interest with Microsoft concerning 219 and 637 patent.

105.    Following activities formed racketeering pattern: *First*, on May 27, 2016, Microsoft told Khalid that he can't tell his investors that Khalid had exclusive right to '637 and '219 patents unless and until Khalid grant free license to Microsoft causing fear in Khalid by withholding exclusion list as a hostage. *Second*, on Oct 25, 2011, and again in 2016, Citrix claimed '219 and '637 patent applications from Khalid by illegally withholding Khalid's severance money as a hostage under the guise of illegal and unenforceable contract. *Third*, between 2017 and 2018, in response to a discovery request to one WA state court litigation against Citrix, Microsoft didn't produce the exclusion list under the MS-Employee Agreement impacting Khalid's legal claim. *Fourth*, in 2016, Microsoft forged Khalid's MS-Employee Agreement by removing exclusion list in violation of RCW 9A.60.020. *Fifth*, in 2006 Citrix and in 2011 Microsoft had Khalid signed two MS-Employee Agreements with deception under RCW 9A.60.030 when they made false promise that Khalid's patent will be protected.  The *Fourth & Fifth* instances above are C felony in WA and supports extortion when using those illegal act to get property.

106.    Neither Microsoft nor Citrix owned those patents, they never had right to begin with. They tried to create right it wanted using illegal contracts. At least in two of those instances they used wrongful threats communicating directly to Khalid the intent to "provide information or withhold testimony or information[exclusion list] with respect to another's[Khalid's] legal claim or defense[against Citrix]" or "act[litigation or severance withhold] which is intended to harm substantially the person[Khalid] threatened … with

COMPLAINT
KHALID v CITRIX
Page 26 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

respect to his … business, financial condition" under RCW 9A.04.110(28)(g)& RCW 9A.04.110(28)(j). Microsoft and Citrix assertions were material risk or threat causing fear in Khalid because under both Washington and federal law Khalid was required to disclose those risk to any potential investors or buyers of '219 and '637 patents making those assertions "wrongful threats" RCW 9A.04.110(28). Because Microsoft and Citrix acted "knowingly to obtain or attempt to obtain by threat property or services" of the 219 and 637 patents with wrongful threats, those constituted 'extortion' in the second degree under *RCW 9A.56.130*. WA second degree extortion meets federal standard for extortion for the purpose of Rico claim.

107.   Citrix in 2011 and in 2016 and Microsoft in 2015 and 2016 threatened Khalid with serious harm of litigation threat and financial loss to cause fear in Khalid if Khalid doesn't share his labor service in the form of a grant of free patent license. Those were attempt to violates involuntary servitude and was illegal act under  18 U.S.C. § 1994(a). Citrix and Microsoft made patent demand without any contractual basis because its contract was unenforceable. Those separate four acts was to obtain patent property that didn't belong to Microsoft or Citrix, and they didn't have any valid rights. "obtaining of property from another[Khalid], induced by wrongful use of actual or threatened force, violence, or fear[severance withhold  or litigation for attempted involuntary servitude]" constituted extortion under 18 U.S.C. § 1951(b). Here property is the free patent license Citrix and Microsoft claimed to '219 and '637 patents without any contractual or legal basis.

108.   The enterprise has a scheme to defraud employees. Microsoft mislead Khalid and other employees using emails constituting email fraud to conduct the business affairs of

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

the enterprise. In 2016, Microsoft in M&G letter sent to Khalid over email falsely asserted Khalid didn't submit an exclusion list and as a result, Microsoft owned '219 and '637 patent. Microsoft in 2011, over email and by sharing the MS-Employee Agreement told Khalid that Khalid could submit an exclusion list that would protect employee-owned invention under section 6 of the MS-Employee Agreement; that was a false representation. Because Microsoft used the same MS-Employee Agreement to bring at least a few thousands of employees, Microsoft made those false assertions at least a few thousand times between 2010-2020. In 2012, Citrix counsel told Khalid Citrix already owned '219 and '637 patents which is a false information. In 2015, Citrix counsel told Khalid that Citrix has some form of interest in '219 and '637 patents which is also a false. In each of those cases they hoped Khalid would give them patent license.

109.  Citrix violated *18 U.S.C. § 1962(c)* by knowingly associating itself with the aforementioned enterprise. Citrix violated *18 U.S.C. § 1962(a)* for deriving benefits from the pattern of racketeering activities by the enterprise. Citrix violated *18 U.S.C. § 1962(b)* by conducting pattern of racketeering activities through the enterprise.

110.  Citrix violated *18 U.S.C. § 1962(d)* by conspiring with Microsoft to violate 18 U.S.C. § 1962(a-c) by knowingly agreeing to facilitate a scheme which includes the operation or management of the associate-in-fact enterprise that attempted to take over '219 and '637 patents.

**(Count VI -  Obstruction of Justice**

**under 42 USC § 1985(2))**

111.  Plaintiff hereby incorporates paragraphs 1 through 69.

COMPLAINT
KHALID v CITRIX
Page 28 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

112.    "Inventors" are protected class under *US Const section 8, Clause 8*, that congress required to secure patent right to inventor from a private party. Khalid being the inventor of '219 and '637 patents is a member of "Inventors" class and is a US citizen. By claiming ownership to '219 and '637 patents Citrix aimed its hostility towards patent terms and "the Exclusive Right" secured to inventors under *US Const section 8, clause 8* and 35 USC 271.

113.    In 2017 and 2018 Citrix used the M&G letter Microsoft issued in 2016 to hurt Khalid's claim in the WA State court. The M&G letter contained materially false information. Citrix asserted common interest with Microsoft concerning '219 and '637 patents.

114.    On May 27, 2016, Microsoft issued the M&G letter 2 weeks after Citrix filed a federal case against Khalid. Citrix used that letter against Khalid. By using the M&G letter with false information, Citrix and Microsoft, or Citrix and its employees conspired for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice in case pending with this court in an attempt to intimidate jury or Khalid as witness. Citrix violated the first part of 42 USC § 1985(2).

115.    By using the M&G letter with false information, Citrix and Microsoft, or Citrix and its employees conspired for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice in Washington State court, with intent to deny Khalid the equal protection of the laws.

116.    Citrix violated the second part of 42 USC § 1985(2) to obstruct Khalid's damage recovery of around $27 million in legal proceedings against Citrix.

**(Count VII -  Conspiracy to violate "the exclusive Right" and "Involuntary Servitude" under 42 USC § 1985(3))**

COMPLAINT
KHALID v CITRIX
Page 29 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

117.   Plaintiff hereby incorporates paragraphs 1 through 69.

118.   "Inventors" are declared protected class under _US Const section 8, Clause 8_, that congress required to secure from the private party. Khalid being the inventor of '219 and '637 patents is a member of "Inventors" class and is a US citizen. By claiming ownership to '219 and '637 patents Citrix aimed its hostility towards "the exclusive Right" and associated limited terms secured to inventors under _US Const section 8, clause 8_ and 35 USC 271.

119.   Citrix and Microsoft conspired, for the purpose of depriving Khalid, directly or indirectly, the equal protection of the laws under "the exclusive Right" under '219 and '637 patents secured to Khalid as a member of the "Inventors" class protected by _US Const section 8, Clause 8_.  In furtherance of the object of such conspiracy, In 2017 and 2018 Citrix used M&G letter with false information to make various claim like Khalid doesn't own the patent, Citrix has right to patent because Citrix has agreement with Microsoft and Microsoft owns the patent.

120.   In furtherance of the object of such conspiracy, and after refusing $50,000/patent licensing terms, Citrix waged a multi-million dollar litigation to crush Khalid to ensure Khalid can't assert his patent against Citrix or Microsoft and in an attempt to force Khalid to grant free license to both Citrix and Microsoft.

121.   Khalid and his team added 30,000 hours of labor in those patents to create his self-employment. Khalid would never share those labor with Citrix voluntarily. Citrix Employees such as Robert Feldman, Kellan Ponikiewicz  conspired along with Citrix and Microsoft in furtherance a conspiracy to claim Khalid's labor free without compensation and with threat

COMPLAINT
KHALID v CITRIX
Page 30 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

of litigation and by withholding severance money depriving Khalid to be free from Involuntary Servitude as protected by the Thirteenth Amendment.

**(Count VIII - Citrix violated Civil right under 42 USC § 1983)**

122.    Plaintiff hereby incorporates paragraphs 1 through 69.

123.    "the exclusive Right" under '219 and '637 patents were secured to Khalid by _US Const section 8, Clause 8_ and was free from any claim to the right by any private party. The right is not a common law right and not controlled by any state law.

124.    The "exclusive Right" under '219 and '637 patents doesn't require any state action or state involvement to be protected by 42 USC § 1983.

125.    Being empowered by state contract law or common law, and with full understanding of its contract, Citrix interfered with the exclusive right to '219 and '637 patents that deprived Khalid from enjoying his property or rights.

**(Count IX - Common law tort –**

**trespass and interference with business property)**

126.    Plaintiff hereby incorporates paragraphs 1 through 69.

127.    Citrix trespassed Khalid's patent right under 219 and 637 patents by using an Employee Agreement that was voidable and unenforceable. Such trespass became illegal because Citrix didn't have right to patents. As a result Khalid couldn't utilize his provisional rights under 35 USC 154(d) that expired in 2018 for '219 patent and to be expire in 2020 for '637 patents. Khalid is also loosing potential royalty every day.

128.    By making claim to '219 and '637 patents Citrix restricted effective use of the patent. Plaintiff sustained damage from such unlawful interference.

COMPLAINT
KHALID v CITRIX
Page 31 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

129.    Citrix had a common law duty not to cloud or interfere with Khalid's patent title to hurt the patent term. Patent law doesn't allow Citrix to get the "exclusive right" a privilege only guaranteed to inventor unless inventor voluntarily relinquish it. Citrix didn't offer any incentive for that right.

130.    Citrix right to petition under the first amendment can't be used to undermine the higher privilege under the patent clause.

131.    Citrix breached its common law duty.

## (Count X -  Reserving right to amend and add new claim)

132.     Plaintiff hereby incorporates paragraphs 1 through 69.

133.    Reserving right to add new claims or amend existing claims.


## REQUSTED RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

134.    Civil remedies under 15 U.S.C. § 15, 18 U.S.C. § 1964  RCW 19.86.090 and RCW 9A.82.100(4)(d) including treble damage, cost and fees.

135.    Damages for loss of patents and damages for loss of profit in business in an amount to be proved at trial. Damages to Startup Company in an amount to be proved at trial.

136.    Injunctive relief and declaratory judgment in Plaintiff's favor;

137.    Prejudgment interest in an amount to be proved at trial;

138.    Compensation for the tax penalty associated with any recovery;

139.    Costs and legal fees pursuant to RCW 59.18 and RCW 4.84 or other rule of law or equity.

COMPLAINT
KHALID v CITRIX
Page 32 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

140.    Punitive damage, Actual damage and attorney fees available under 18 USC § 1595(a) and under Section 1985, section 1983 and available elsewhere.

141.    Penalty and Punitive damage for inconvenience and discomfort as authorized under <u>Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977</u> for Citrix interfering with business property. Punitive damage under Florida law.

142.    Damage to right under 35 USC 154(d) for '219 and '637 patent, loss of patent term, loss of royalty for not being able to enforce patent.

143.    Any recovery under Unjust enrichment and restitution.

144.    Plaintiff is also looking for protection under whistle blower and similar law so that defendant can't harass Plaintiff unnecessarily because Plaintiff is going to notify multiple government agencies to investigate systematic violation by Defendant.

145.    Whatever further and additional relief the court shall deem just and equitable.

### DEMAND FOR JURY

Plaintiff hereby demands that this case be tried before SIX or TWELVE  jury.

**SIGNED and DATED** this __11th__ day of May, 2020.



_____
Plaintiff Pro Se
ATM Shafiqul Khalid
17446 NE 28th ST
Redmond, WA 98052
(425) 445 7157
atmkhalid@gmail.com

COMPLAINT
KHALID v CITRIX
Page 33 of 33

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157